UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

SARAH ORZECHOWTIZ,
an individual,

      Plaintiff,

v.

NOVA SOUTHEASTERN UNIVERSITY,
a private university, SABRINA J. STERN,
an individual,

      Defendants.

## COMPLAINT

Plaintiff, Sarah Orzechowitz, an individual ("Orzechowitz"), by and through undersigned counsel, hereby sues Nova Southeastern University, a private university ("NSU"), and Sabrina J. Stern, an individual ("Stern"), and alleges:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Orzechowitz is and was, at all material times, an individual with her primary place of residence in Miami-Dade County, Florida and who is otherwise *sui juris*.

2. Defendant NSU is and was, at all material times, a private university that receives federal government funding directed towards it educational programs, with its principal place of doing business in Broward County, Florida.

3. Defendant Stern is and was, at all material times, an individual with her primary place of residence in Miami-Dade County, Florida and who is otherwise *sui juris*.

4. This Court has subject matter jurisdiction over this action as there is a claim pursuant to Title VI of the Civil Rights Act of 1964, 78 Stat. 252, as amended, 42 U.S.C. § 2000d, *et seq*.

5. This Court has jurisdiction over the subject matter over this action as there is a claim pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681, *et seq*.

6. Venue is proper in this District since Plaintiff resides in this District, Defendant NSU's primary place of business is in this District, Defendant Stern resides in this district and the events or omissions giving rise to the claims asserted herein occurred in this District.

## GENERAL ALLEGATIONS

7. Plaintiff Orzechowitz enrolled in Defendant NSU's College of Nursing to pursue a Bachelor's of Nursing Degree, commencing her matriculation in the winter semester of 2012.

8. At the time she matriculated, Plaintiff Orzechowitz was a mentally healthy and happy individual whose desire was to seamlessly pursue her lifelong goal of achieving a career in the field of nursing.

9. Plaintiff Orzechowitz entered into a contract of enrollment as a matriculating student at NSU and the College of Nursing and accepted the policies advertised and promoted within their respective Student Handbooks including, *inter alia*, the "Core Values" of respecting "diversity and equity" of the student and providing "a supportive, caring environment" and the policies of prohibiting discrimination and harassment against students for their race, origin, ancestry, gender, and pregnant status. (See Student Handbook attached as **Exhibit "A"**).

10. At the commencement of her studies, Plaintiff Orzechowitz identified herself to the faculty and administration of NSU as member of the Orthodox Jewish religion and of Jewish ancestry, and as a strict follower of the tenets of the religion and the specific cultural practices of

Orthodox Jews such as keeping kosher and honoring the weekly Jewish Sabbath, more commonly known as Shabbat. Furthermore, near the outset of her studies, she notified the faculty that she was pregnant with her second child.

11. As an orthodox Jewish woman, Plaintiff Orzechowitz sought to pursue her education at NSU free of discrimination and harassment based upon her ancestry, religion, pregnant status and gender, as set forth by NSU's "Non-Discrimination Statement," which promised to provide the Plaintiff an environment free of such discrimination.

12. From the inception of her studies, Plaintiff Orzechowitz was uniquely discriminated against and mistreated by the faculty and administration at NSU's College of Nursing (the "College") on the basis of her being a pregnant, Orthodox Jewish woman. Much of this mistreatment was perpetrated by Defendant Stern, a professor at the College, but was also committed by other faculty members as well, and the administration was notified of same and failed to act, in violation of the terms and conditions of her contract of enrollment and federal law.

13. At all material times, Defendant Stern's and the other faculty's conduct described herein was committed within the scope of their duties as a faculty member at the College; said conduct was the type of conduct they were employed to perform as a faculty member; said conduct occurred within the time and space limits of their employment; the conduct was intended to benefit the College; and was activated at least in part by a desire to serve the College.

14. During the first weeks of the course, Mrs. Orzechowitz was harassed and assaulted by a student of Arab descent who was easily able to identify Plaintiff Orzechowitz as an Orthodox Jewish woman by her practice of "tznuit," which is an Orthodox Jewish custom that married Jewish women cover their hair and dress modestly with knee-length skirts conservative

tops while in public. To this end, Plaintiff Orzechowitz, wore a scarf or a wig covering her hair on a daily basis. However, when she went to the College's lab or hospital though the Plaintiff only wore a scarf. Specifically, on one occasion the male student assaulted the Plaintiff Orzechowitz by pretending to punch the Plaintiff and another time battered her by grabbing and pulling Plaintiff Orzechowitz's backpack while she was wearing it at school. When Plaintiff Orzechowitz brought this to the attention of Defendant Stern, she did not address the male student's misconduct to him in any fashion.

15.     Another instance of Professor Stern's mistreatment of the Plaintiff occurred in the Plaintiff's second semester when the Plaintiff's seven month old first born baby daughter was hospitalized with a life threatening condition immediately prior one of Professor Stern's exams. The illness required Plaintiff to take her baby to the hospital and then subsequently to intensely monitor her thereafter, precluding the Plaintiff from studying on the two days leading up to the exam. Plaintiff requested a make-up exam from Defendant Stern due to her inability to prepare for the exam pursuant to the express policy in Defendant Stern's syllabus stating make-ups exams would be allowed in the case of medical emergencies. Despite said policy's clear dictates, Professor Stern denied the Plaintiff's request, notwithstanding the medical emergency, and insisted the Plaintiff take the exam as scheduled which, not surprisingly, resulted in the Plaintiff receiving a failing grade. When Plaintiff brought the injustice to the attention of Dean Mary Botter, a dean at the College of Nursing ("Dean Botter"), and requested Dean Botter contact Defendant Stern and instruct her to offer Plaintiff a "make-up" exam, Dean Botter refused to take action to rectify the situation and ceded the decision to Defendant Stern. Defendant Stern denied the request and stated to Plaintiff Orzechowitz that the reason she was denying the request is because she believed that the Plaintiff could have found someone else to take the baby to the

hospital and then monitor her, as opposed to the Plaintiff looking after her, and further remarked, in a condescending and patronizing tone, that "everyone must make compromises in their lives."

16. Later in the semester while Plaintiff was pregnant with her second child, during a clinical rotation, the Plaintiff encountered a patient whose treatment chart indicated she may have posed a threat to transmit a highly dangerous bacteria and when the Plaintiff thought she might have exposed herself to a contaminated specimen of the patient, she sought the advice of the clinical instructor as to what safety precautions she should employ. When the Plaintiff could not locate the clinical instructor, she requested the guidance of the nursing manager who instructed her to be cautious and dispose of her scrubs. When the College's clinical instructor shortly thereafter encountered the Plaintiff and the Plaintiff explained what happened, the clinical instructor chastised the Plaintiff for changing out of her school scrubs without her permission and reported the incidence to Professor Stern, who subsequently admonished Plaintiff for changing. When the Plaintiff explained that she was taking extra precaution because she was pregnant, the faculty members disregarded her explanation despite the innocuousness nature of the Plaintiff's actions compared with the potential health threats posed to her and her baby.

17. This insidious insensitivity and pattern of mistreatment on behalf of Defendant Stern and the school administration towards the Plaintiff continued and intensified throughout the semester, especially in connection with the Plaintiff's practice of tznuit. Although the College's handbook specifically carves out an exception in its rules concerning professional attire for religious headdresses to the general rule that students may not wear items covering their heads, Defendant Stern singled-out Plaintiff Orzechowitz for wearing religious headwear at the time Plaintiff was pregnant with her second child, ultimately holding a special meeting with multiple faculty members and Plaintiff to inform Plaintiff that Professor Stern subjectively felt

that some of her religious headwear was unprofessional and informed the Plaintiff that she appeared "ungroomed" as a result of the headdresses she would wear and that the Plaintiff was violating the College's dress policy governing professional appearance. Defendant Stern's assessment that that the Plaintiff was ungroomed could not have been farther from the truth and nothing about the Plaintiff's headwear interfered with the clinical setting and decorum. Furthermore, Defendant Stern instructed Plaintiff Orzechowitz concerning the types of religious headwear Defendant Stern felt were suitable for the Plaintiff to wear at the College and instructed the Plaintiff as to what types of headdresses Plaintiff would be allowed to wear while she was at the College. Despite the fact that two other junior faculty at the meeting with the Plaintiff notified Professor Stern that there was a religious exception to the dress code and the exception did provide any guidelines to students as to what religious headwear would meet the professional attire guidelines, Professor Stern was still not dissuaded in her harassing and discriminatory conduct towards the Plaintiff and insisted the Plaintiff obey Defendant Stern's mandates concerning what religious headdresses the Plaintiff could wear while at the College.

18. In fact, Professor Stern proceeded to monitor Plaintiff Orzechowitz's wearing of her religious headdresses and repeatedly contacted other faculty members to inquire as to whether Plaintiff Orzechowitz was wearing religious headdresses that Defendant Stern individually and arbitrarily approved of. Although other students were allowed to wear hair adornments of their choosing on a daily basis, a practice specifically proscribed by the College's handbook, Defendant Stern did not take any action to monitor and control these student's headwear, despite Plaintiff having specifically pointed out to the faculty their highly uneven application of the headwear policy. As Plaintiff was notified by the faculty when Professor Stern would call them to inquire about her daily headwear, this lead Plaintiff to become very

**STOK FOLK + KON**
**18851 NE 29th Avenue, Suite 1005, Aventura, FL 33180 305.935.4440 Email:** service@stoklaw.com

apprehensive and stressed because Defendant Stern was monitoring her and controlling what religious headwear the Plaintiff could wear. Further, even the other faculty remarked to Plaintiff that Professor Stern was "out to get her" and acting spiteful with respect to her religious headwear, and that Defendant Stern did not act this way towards other students in the College. .

19.     Notably, Professor Stern scheduled the meeting identified above directly before a national nursing exam where if the Plaintiff did well on said exam it would have helped her final grades. However, Plaintiff was so distraught from the meeting that she became physically ill and was not able to take the exam and therefore missed out on the opportunity to raise her grades.

20.     In addition to facing discrimination and harassment from Professor Stern, Plaintiff was subject to discrimination from Professor Yvonne Rhoades in the clinical setting. At the behest of Professor Stern, Professor Rhoades chastised and ridiculed Plaintiff Orzechowitz for wearing a patterned headdress that did not meet Professor Stern's guidelines as to what religious headwear Plaintiff should wear while at the College. When the Plaintiff explained that the headdress which she normally tried to wear to satisfy Professor Stern's guidelines was dirty and stained and in the laundry, and that Plaintiff was awaiting extra headdresses to be delivered from Israel that conformed with Professor Stern's guidelines, Professor Rhoades instructed her to make sure she washed it on the off day of the program, a Saturday. When Plaintiff Orzechowitz notified Professor Rhoades that she could not wash it on Saturday because the Jewish Sabbath falls on Saturday and forbids one from engaging in activities such as laundry during that holy period, Professor Rhoades retorted that Plaintiff should "stop making excuses." This caused the Plaintiff tremendous distress and grief and embarrassment in front of the other students who were there, as she felt the faculty was further mocking her Jewish customs and practices in addition to her practice of tznuit.

21.     Notwithstanding the College faculty's continual attempts to hold Plaintiff Orzechowitz, the only Orthodox Jewish woman in her program, accountable for violating the College's Student Handbook policies concerning professional attire for wearing certain religious headwear the faculty subjectively felt looked "unprofessional," other non-Jewish students in the nursing program were continually permitted to wear certain hair accessories and adornments, such as brightly colored and sparkled headbands, that expressly violated the College's professional attire policies, as non-religious hair adornments were specifically disallowed. Plaintiff brought this to the attention of the faculty, yet nothing was done by the faculty to enforce its own policies and the Plaintiff was continually subjected to Professor Stern's arbitrary and capricious rules concerning her religious headwear. Thus, the faculty at the college did not enforce its own policies as towards other students of non-Jewish ancestry, but yet held Plaintiff Orzechowitz out to the threat of discipline for wearing an item specifically exempted from the guidelines.

22.     When Plaintiff Orzechowtiz specifically notified Dean Botter that she was being discriminated against and harassed by the faculty on the basis of the being a pregnant, Jewish woman who adheres to the cultural practice of tznuit, no action was taken by the dean or any other administrative officers at the College to rectify the discrimination and other misconduct.

23.     Such misconduct at the College towards Plaintiff created an intolerable environment where Plaintiff felt she was being harassed and discriminated against on the basis of being a pregnant, Jewish woman and such toxic environment led the Plaintiff, who throughout her prior academic career used to be an excellent student generally receiving "A's", to receive a "C" in Professor Stern's class and caused the Plaintiff to suffer tremendous stress and discomfort in connection with all facets of the Nursing program.

24. Such acts and omissions to act constitute a violation of Plaintiff's right to be free of race, ethnic and/or ancestral discrimination and gender discrimination and a violation of the Plaintiff's First Amendment Rights under our country's federal Constitution governing free speech.

25. As a result of the afore-referenced misconduct, Plaintiff Orzechowtiz suffered severe emotional distress which forced to withdraw from the College and to suspend her pursuit of a nursing degree. The Plaintiff still feels dejected to this day that she has been unable to obtain her nursing degree and still suffers nightmares concerning the faculty's treatment of her. Now in order to pursue her nursing degree at an accredited local university in South Florida, she will have to do so at great additional expense and with a considerable delay of at least two years resulting in pecuniary loss from the delay in entering the work force.

26. Plaintiff is obligated to pay her attorney's a reasonable fee for the legal services provided in connection with this action.

27. All conditions precedent to this action have been performed, occurred, excused, waived or otherwise satisfied.

## COUNT I
## VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964
(Ancestral Discrimination)

28. Plaintiff realleges and reincorporates paragraphs 1 through 27 as if set forth herein.

29. Defendant NSU is an educational institution which receives federal government funding for its educational programming and is thus subject to Title VI of the Civil Rights Act of 1964, 78 Stat. 252, as amended, 42 U.S.C. § 2000d et seq. and there arises a private cause of action for a violation thereof.

30. Title VI broadly prohibits discrimination on the basis of race, ancestry, and national origin in a wide array of programs and activities undertaken by educational institutions, including the College's baccalaureate program.

31. Plaintiff is a member of a protected class that Title VI was meant to protect as she is of Jewish ancestry and was similarly situated with other students in the nursing program who are not members of the protected class.

32. Plaintiff was treated disparately in that Defendant NSU allowed its faculty to intentionally discriminate against Plaintiff Orzechowitz on the basis of her being an Orthodox Jewish woman creating a hostile environment of harassment and ridicule, sufficiently severe and pervasive to compromise or interfere with educational opportunities normally available to students by treating Plaintiff differently on the basis of her Jewish ancestry and customs. Significantly, the College's faculty did not harass, ridicule, intimidate, and fail to employ the dictates of its syllabus, or arbitrarily enforce the dress code, especially concerning religious headdress, against students who are not members of a protected class in the program. This created an environment which was severely disadvantageous to Plaintiff in that she was not able to pursue her degree in a fashion free of hostility such as that afforded to other students as this misconduct caused Plaintiff to be constantly scared, anxious and severely distressed because she was subjected to the faculty's ridicule and insensitivity towards her being an Orthodox Jewish woman, resulting in poor grades and intolerable scholastic environment which would only cause Plaintiff to become further stressed.

33. Defendant NSU has violated Title VI as towards Plaintiff in as much as Plaintiff was a student at NSU, was subject to harassment based upon her being a women of Jewish ancestry who practices Orthodox Jewish customs, creating a hostile environment, and a school

official authorized to take corrective action, Dean Botter, was put on actual notice of the harassment and discrimination on multiple occasions, yet she exhibited deliberate indifference towards it by failing to ameliorate or even take any corrective action concerning the faculty's mistreatment of the Plaintiff.

34. As a proximate cause of Defendant NSU's violation of Title VI, the Plaintiff has been damaged and is entitled to her damages as a result of said violation.

35. Should Plaintiff prevail, she is entitled to her attorney's fees pursuant to 42 U.S.C.A § 1988.

WHEREFORE, Plaintiff Orzechowitz demands monetary, compensatory damages, and attorney's fees against NSU, together with such other and further relief as this Court deems just and proper.

**COUNT II**
**VIOLATION OF TITLE IX OF THE EDUCATIONAL AMENDMENTS OF 1972**
**(Gender Discrimination)**

36. Plaintiff realleges and reincorporates paragraphs 1 through 27 as if set forth herein.

37. Defendant NSU is as an educational institution which receives federal government funding towards its educational programs is subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681–1688 and there arises a private cause of action for a violation thereof.

38. Title IX broadly prohibits sexual and/or gender discrimination, including same sex discrimination, in a wide array of programs and activities undertaken by educational institutions, including the College's baccalaureate program.

39. Defendant NSU in allowing Defendant Stern and other female faculty to

discriminate against Plaintiff Orzechowitz on the basis of her being an Orthodox Jewish woman created a hostile environment of harassment, ridicule, sufficiently severe and pervasive to compromise or interfere with educational opportunities normally available to students by treating Plaintiff differently on the basis of her gender. Significantly, Defendant Stern and the other faculty did not harass, ridicule, intimidate, fail to employ her syllabus practices, or arbitrarily enforce the dress code against men in the program; no similar misconduct was directed towards male students. This created an environment which was severely disadvantageous to Plaintiff in that she was not able to pursue her degree in a fashion free of hostility such as that afforded to male students.

40. Defendant NSU has violated Title IX as towards Plaintiff in as much as Plaintiff was a student at NSU, was subject to harassment based upon her being a woman who practices Orthodox Judaism, creating a hostile environment, and a school official authorized to take corrective action, Dean Botter, was put on actual notice of the harassment and discrimination, yet exhibited deliberate indifference towards it.

41. As a proximate cause of Defendant NSU's violation of Title IX, the Plaintiff has been damaged and is entitled to her damages as a result of said violation.

42. Should Plaintiff prevail, she is entitled to her attorney's fees pursuant to 42 U.S.C.A § 1988.

WHEREFORE, Plaintiff Orzechowitz demands monetary, compensatory damages and attorney's fees against NSU, together with such other and further relief as this Court deems just and proper.

## COUNT III
## VIOLATION OF TITLE IX OF THE EDUCATIONAL AMENDMENTS OF 1972
### (Pregnancy Discrimination)

43.     Plaintiff realleges and reincorporates paragraphs 1 through 27 as if set forth herein.

44.     Defendant NSU is as an educational institution which receives federal government funding towards its educational programs is subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681–1688 and there arises a private cause of action for a violation thereof.

45.     Title IX broadly prohibits pregnancy-related discrimination in a wide array of programs and activities undertaken by educational institutions, including the College's baccalaureate program.

46.     Defendant NSU in allowing Defendant Stern and other female faculty to discriminate against Plaintiff Orzechowitz on the basis of her being pregnant created a hostile environment of harassment, ridicule, sufficiently severe and pervasive to compromise or interfere with educational opportunities normally available to students by treating Plaintiff differently on the basis of her pregnancy status. Significantly, Defendant Stern and the other faculty did not harass, ridicule, intimidate, fail to employ her syllabus practices, or arbitrarily enforce the dress code against non-pregnant students in the program; no similar misconduct was directed towards non-pregnant students.  This created an environment which was severely disadvantageous to Plaintiff in that she was not able to pursue her degree in a fashion free of hostility such as that afforded to non-pregnant students.

47.     Defendant NSU has violated Title IX as towards Plaintiff in as much as Plaintiff was a pregnant student at NSU, was subject to harassment based upon her being a woman who was pregnant, creating a hostile environment, and a school official authorized to take corrective action, Dean Botter, was put on actual notice of the harassment and discrimination, yet exhibited

deliberate indifference towards it.

48.     As a proximate cause of Defendant NSU's violation of Title IX, the Plaintiff has been damaged and is entitled to her damages as a result of said violation.

49.     Should Plaintiff prevail, she is entitled to her attorney's fees pursuant to 42 U.S.C.A § 1988.

WHEREFORE, Plaintiff Orzechowitz demands monetary, compensatory damages and attorney's fees against NSU, together with such other and further relief as this Court deems just and proper.

## COUNT IV
## BREACH OF CONTRACT

50.     Plaintiff realleges and reincorporates paragraphs 1 through 27 as if set forth herein.

51.     Defendants NSU and Stern, as a member of NSU's faculty, agreed to abide by NSU's policies and procedures as contained in NSU's Student Handbook and the College's Student Handbook, as well as NSU's gender discrimination and religious discrimination statement and grievance procedures, pursuant to which agreements Plaintiff Orzechowtiz agreed to enroll in NSU's College of Nursing's baccalaureate program.

52.     NSU's policies and procedures set forth under Orzechowitz's contract with NSU, which Orzechowitz was a party to, NSU and Stern were contractually bound, to permit Orzechowitz to pursue her education in a safe and caring environment, free from ancestral, gender, and pregnancy status discrimination by faculty members such as Stern.

53.     In breach their contract with Orzechowitz, NSU and Stern, harassed and discriminated against the Plaintiff on the basis of her being a Jewish woman, and intentionally sought to cause her mental distress, in violation of their contractual obligations to Orzechowitz.

54. As a direct and proximate result of NSU's and Stern's breach of contract with the Plaintiff, as complained of herein, Plaintiff became severely emotionally distressed and fearful that she would be subject to further discrimination, and as a result, this caused her to withdraw from the college squandering her tuition, causing delay and disruption damages in her pursuit of a nursing degree, and loss of future income.

WHEREFORE, Plaintiff Orzechowitz demands monetary damages against NSU and Stern, together with such other and further relief as this Court deems just and proper.

## COUNT V
## BREACH OF FIDUCIARY DUTY

55. Plaintiff realleges and reincorporates paragraphs 1 through 27 as if set forth herein.

56. As a private university NSU promoted itself to Plaintiff Orzechowtiz as providing its students with a safe, caring and nurturing learning environment wherein Plaintiff could rely upon and trust that NSU would provide an environment free of discriminatory practices and serve as a fiduciary to its students. Plaintiff vested confidence in NSU in good faith and accepted this invitation of trust and relied upon NSU to provide her with a safe, caring and nurturing environment.

57. As Plaintiff's teacher, Professor Stern invited Plaintiff's utmost trust and confidence as Plaintiff's fiduciary, pursuant to which Stern promised to not only teach her to nursing, but promised to provide her an environment free of discrimination and harassment. Plaintiff accepted Stern's invitation and reposed the utmost of trust and confidence in Stern as her fiduciary.

58. NSU and Stern abused Plaintiff Orzechowitz's utmost trust and confidence by discriminating against her on the basis of her being pregnant and an Orthodox Jewish women,

15

harassing and ridiculing her for her Jewish customs, causing Orzechowitz to become severely emotionally distressed as a result and compelling her to withdraw from the College.

59. NSU's and Stern's breaches of their fiduciary duties to Orzechowitz was a direct, proximate and legal cause of Plaintiff Orzechowitz's damages.

60. As a consequence of the Defendants' actions, Plaintiff has been deprived of a loss of income, endured extreme mental suffering and sustained monetary damages.

WHEREFORE, Plaintiff Orzechowitz demands monetary and compensatory damages against NSU and Stern, together with such other and further relief as this Court deems just and proper.

## COUNT VI
## CONSTRUCTIVE FRAUD

61. Plaintiff realleges and reincorporates paragraphs 1 through 27 as if set forth herein.

62. As a private university NSU promoted itself to Plaintiff Orzechowtiz as providing its students with a safe, caring and nurturing learning environment wherein Plaintiff could rely upon and trust that NSU would provide an environment free of discriminatory practices and serve as a fiduciary to its students. Plaintiff vested confidence in NSU in good faith and accepted this invitation of trust and relied upon NSU to provide her with a safe, caring and nurturing environment.

63. As Plaintiff's teacher, Professor Stern invited Plaintiff's utmost trust and confidence as Plaintiff's fiduciary, pursuant to which Stern promised to not only teach her to nursing, but promised to provide her an environment free of discrimination and harassment. Plaintiff accepted Stern's invitation and reposed the utmost of trust and confidence in Stern as her fiduciary.

64.	NSU and Stern abused Plaintiff Orzechowitz's utmost trust and confidence by discriminating against her on the basis of her being an Orthodox Jewish women, harassing and ridiculing her for her religious customs, causing Orzechowitz to become severely emotionally distressed as a result and compelling her to withdraw from the College.

65.	NSU's and Stern's breaches of their fiduciary duties to Orzechowitz was a direct, proximate and legal cause of Plaintiff Orzechowitz's damages.

66.	As a consequence of the Defendants' actions, Plaintiff has been deprived of a loss of income, endured extreme mental suffering and sustained monetary damages.

WHEREFORE, Plaintiff Orzechowitz demands monetary and compensatory damages against NSU and Stern, together with such other and further relief as this Court deems just and proper.

## COUNT VII
## WILLFUL AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

67.	Plaintiff realleges and reincorporates paragraphs 1 through 27 as if set forth herein.

68.	NSU and Stern, with intentional and reckless disregard for Plaintiff, inflicted severe of emotional distress upon Stern, by intentionally discriminating against her on the basis of her being a pregnant, Jewish woman, by criticizing her for taking care of her sick baby instead of studying for an exam, ridiculing her for keeping the Jewish Sabbath a holy day, by treating her differently than all of the other students and holding her out to public obloquy, causing her to be scared and severely distressed to go the College resulting in anxiety attacks when she was forced to see Defendant Stern.

69.	NSU's and Stern's conduct was outrageous beyond all bounds of decency, was atrocious and utterly intolerable in any civilized community.

17

70. Such misconduct caused Plaintiff to become physically and emotionally ill.

71. This willful infliction of extreme emotional distress to Plaintiff was the direct, proximate and legal cause of her damages.

72. The misconduct complained of herein was willful, wanton, carried out with reckless disregard for Plaintiff and if permitted without rebuke would encourage others to engage in such outrageous behavior.

73. As a consequence of the Defendants' actions, Plaintiff has been deprived of a loss of income, endured extreme mental suffering and sustained monetary damages.

WHEREFORE, Plaintiff Orzechowitz demands punitive damages upon an evidentiary showing pursuant to Fla. Statutes §768.72, monetary and compensatory damages against NSU and Stern, together with such other and further relief as this Court deems just and proper.

## COUNT VIII
## NEGLIGENT HIRING

74. Plaintiff realleges and reincorporates paragraphs 1 through 27 as if set forth herein.

75. At all times material hereto, Defendant NSU, had a duty to use care in hiring employees who would not harass and discriminate against its students on the basis of gender, religion, ancestry and pregnant status.

76. Defendant NSU's employee, Defendant Stern, violated the rights of the Plaintiff by committing gender, religious, ancestral and pregnancy discrimination against Plaintiff.

77. Defendant NSU was negligent in that it failed to adequately investigate its employee's background which would have revealed Stern's discriminatory propensities.

78. Defendant NSU knew, or should have known, that the Defendant Stern had certain propensities which would lead her to discriminate and harass its students such as Plaintiff.

79. As a direct, proximate and foreseeable result of the negligence of the Defendant NSU, the Plaintiff has suffered great shame, indignity, mortification and disgrace, mental anguish and loss of income.

WHEREFORE, Plaintiff Orzechowitz demands monetary and compensatory damages against NSU, together with such other and further relief as this Court deems just and proper.

## COUNT IX
## NEGLIGENT RETENTION

80. Plaintiff realleges and reincorporates paragraphs 1 through 27 as if set forth herein.

81. At all times material hereto, Defendant NSU had a duty to train, supervise, and retain employees who are fit to be faculty and a duty to investigate, discharge or reassign employees when it becomes aware or should become aware of problems surrounding employee's unfitness.

82. The Defendant, NSU, was negligent and breached the aforementioned duties in, but not limited to, at least one of the following ways:

a. By failing to reasonably train and supervise Defendant Stern;

b. By failing to investigate the discriminatory and harassing behavior constituting tortious misconduct described above committed by Defendant Stern against the Plaintiff, notwithstanding the fact that the Defendant, NSU was put on notice of the misconduct of Defendant Stern on multiple occasions;

c. By failing to discharge or reassign Defendant Stern from her professional duties once it learned of her misconduct towards Plaintiff;

d. By hiring and retaining employees, including the Defendant Stern, whom it knew or should have known had propensities to act willfully, maliciously or negligently towards students of the College;

83. As a direct, proximate and foreseeable result of the negligence of Defendant NSU, Plaintiff has suffered great shame, indignity, mortification and disgrace, mental anguish, loss of future income, and delay and disruption damages.

WHEREFORE, Plaintiff Orzechowitz demands monetary and compensatory damages against NSU, together with such other and further relief as this Court deems just and proper.

## REQUEST FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Dated this 9th day of October, 2014.

**STOK FOLK + KON**
*Attorneys for Plaintiff*
18851 NE 29th Avenue
Suite 1005
Aventura, FL 33180
Tel. 305-935-4440
Fax. 305-935-4470

By:   //s// Josh R. Dell, Esq.
Robert A. Stok, Esq.
Fla. Bar No. 857051
rstok@stoklaw.com
Josh R. Dell, Esq.
Fla. Bar No. 92341
jdell@stoklaw.com