UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-62217-CIV-LENARD/O'SULLIVAN

SARAH ORZECHOWITZ,

    Plaintiff,

v.

NOVA SOUTHEASTERN UNIVERSITY, a private university, SABRINA J. STERN, an individual,

    Defendant.
_____/

## ORDER[1]

THIS MATTER comes before the Court on the Defendant's Motion to Dismiss Counts [IV], V, VI, and VII of the Plaintiff's Complaint (DE# 5, 11/22/13). This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b). See Order of Reference (DE# 16, 12/16/13).

## BACKGROUND

On October 9, 2014, the plaintiff Sarah Orzechowitz (hereinafter "plaintiff") filed a nine-count complaint alleging certain acts of discrimination by the defendants, Nova Southeastern University (hereinafter "NSU") and Sabrina J. Stern (hereinafter "Professor Stern"). See Complaint (DE# 1, 10/9/14). The plaintiff alleges that the defendants discriminated against her because she was a pregnant, Orthodox Jewish woman. Id. The complaint alleges the following cause of action: (1) violation of Title VI

___

[1]The parties have consented to jurisdiction by a United States Magistrate Judge on motions to dismiss. See Plaintiff's Notice of Filing of Joint Consent to Jurisdiction by a U.S. Magistrate Judge (DE# 15, 12/12/13).

of the Civil Rights Act of 1964 (Count I); (2) violation of Title IX of the Educational Amendments of 1972 (gender discrimination) (Count II); (3) violation of Title IX of the Educational Amendments of 1972 (pregnancy discrimination) (Count III); (4) breach of contract (Count IV); (5) breach of fiduciary duty (Count V); (6) constructive fraud (Count VI); (7) willful and intentional infliction of emotional distress (Count VII); (8) negligent hiring (Count VIII) and (9) negligent retention (Count IX). Id.

On November 22, 2013, the defendants moved to dismiss certain counts of the complaint for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6). See Defendants' Motion to Dismiss Counts [IV], V, VI and VII of the Plaintiff's Complaint and Incorporated Memorandum of Law in Support Thereof (DE# 5,11/22/13). The plaintiff filed her response in opposition to the instant motion on January 10, 2014. See Plaintiff's Response to the Defendants' Motion to Dismiss Counts IV, V, VI, VII of the Plaintiff's Complaint and Opposing Memorandum of Law (DE# 21, 1/10/14). The defendants filed their reply on January 21, 2014. See Defendants' Reply to Plaintiff's Response in Opposition to the Defendants' Motion to Dismiss Counts IV, V, VI, and VII of the Complaint (DE# 23, 1/21/14). This matter is ripe for consideration.

## STANDARD OF REVIEW

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8 does not require "detailed factual allegations," but "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted)).

In considering a motion to dismiss brought under FED. R. CIV. P. 12(b)(6), the Court's analysis is generally limited to the four corners of the complaint and the attached exhibits. See Grossman v. Nationsbank, 225 F.3d 1228, 1231 (11th Cir. 2000). The Court must also accept the non-moving party's well-pled facts as true and construe the complaint in the light most favorable to that party. Caravello v. Am. Airlines, Inc., 315 F. Supp. 2d 1346, 1348 (S.D. Fla. 2004) (citing United States v. Pemco Aeroplex, Inc., 195 F.3d 1234, 1236 (11th Cir. 1999) (en banc)). To survive a motion to dismiss, the complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. The issue to be decided is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scheuer, 468 U.S. 183 (1984).

## ANALYSIS

This complaint arises from the plaintiff's enrollment as a student in NSU's College of Nursing in the winter semester of 2012. See Complaint (DE# 1 at ¶7, 10/9/14). The plaintiff alleges that due to various discriminatory acts by NSU and Professor Stern due to the plaintiff's status as a pregnant, Orthodox Jewish woman, she suffered severe emotional distress and was forced to withdraw from the College of Nursing. Id. at ¶25.

The defendants move to strike counts IV through VII of the complaint for failure to state a claim. The plaintiff opposes the motion with respect to all counts except count IV (breach of contract) against Professor Stern. See Plaintiff's Response to the Defendants' Motion to Dismiss Counts IV, V, VI, VII of the Plaintiff's Complaint and Opposing Memorandum of Law (DE# 21 at 6, 1/10/14) (stating that the plaintiff "will stipulate to dismissal of the breach of contract claim as to [Professor Stern]."). Accordingly, count IV as to Professor Stern is **DISMISSED**. The undersigned will now address the remaining counts at issue in the instant motion.

A.   **Count IV - Breach of Contract Against Defendant NSU**

The defendants argue that the breach of contract claim should be dismissed because the plaintiff has failed to identify an enforceable contract between herself and NSU. See Defendants' Motion to Dismiss Counts [IV], V, VI and VII of the Plaintiff's Complaint (DE# 5 at 2, 11/22/13). The defendants note that the plaintiff "only points to NSU's Student Handbook provisions found in a section labeled 'Core Values' and within NSU's Non-Discrimination Statement." Id. at 5. According to the defendants, the provisions are unenforceable because they are not "specific and concrete" and represent "ideals" and "goals." Id. The defendant further argues that NSU's "mere[ ] recitation of its obligations under existing anti-discrimination laws" does not "create a separate and independent contractual obligation." Id.

The elements of a breach of contract claim are: "(1) a valid contract; (2) a material breach; and (3) damages." Beck v. Lazard Freres & Co., LLC, 175 F.3d 913, 914 (11th Cir. 1999) (citing Abruzzo v. Haller, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)). "Under Florida law, the legal relationship between a private university and a

student is 'solely contractual in character.'" Sirpal v. Univ. of Miami, 509 F. App'x 924, 929 (11th Cir. Fla. 2013) (per curiam) (quoting Jallali v. Nova Se. Univ., Inc., 992 So.2d 338, 342 (Fla. 4th DCA 2008)). "The university 'may set forth the terms under which it will admit and subsequently graduate students who subject themselves to the rules, regulations and regimen of the college' and "[t]hese terms may be derived from university publications such as the student handbook and catalog." Id. (quoting Univ. of Miami v. Militana, 184 So. 2d 701, 704 (Fla. 3d DCA 1966); Jallali, 992 So. 2d at 342).

The defendants argue that "[t]he theory upon which Florida courts have found an implied contract between a private university and a student relates specifically to the service at issue in the implied contract," i.e., "supply[ing] an education designed to lead to a college degree." Defendants' Reply to Plaintiff's Response in Opposition to the Defendants' Motion to Dismiss Counts IV, V, VI, and VII of the Complaint (DE# 23 at 2, 1/21/14) (emphasis in original). The undersigned reads the case law more broadly supporting the proposition that a student handbook or publication can create contractual obligations on the part of university that are not necessarily limited to the "service" of providing a college degree. See e.g., Sirpal v. Univ. of Miami, 684 F. Supp. 2d 1349, 1359 (S.D. Fla. 2010) (denying university's motion to dismiss a former student's breach of contract claim noting that "if [the former student] was entitled to an investigation that included an explanation of his rights, a notice of charges, and a range of pleas, and the University failed to comply before it dismissed [the former student] from the Ph.D. program, the University has breached its contract with [the former student]."), aff'd on other grounds, 509 F. App'x 924, 929 (11th Cir. Fla. 2013).

> In the instant case, the complaint alleges that:
>
> Plaintiff Orzechowitz entered into a contract of enrollment as a matriculating student at NSU and the College of Nursing and accepted the policies advertised and promoted within their respective Student Handbooks including, inter alia, the "Core Values" of respecting "diversity and equity" of the student and providing "a supportive, caring environment" and the policies of prohibiting discrimination and harassment against students for their race, origin, ancestry, gender, and pregnant status.

Complaint (DE# 1 at ¶9, 10/9/14). The undersigned finds that the plaintiff has pled the existence of a contract,[2] a material breach and damages and the plaintiff's breach of contract claim will not be dismissed.

**B.    Count V  - Breach of Fiduciary Duty**

The defendants also seek to dismiss the plaintiff's breach of fiduciary duty claim. "The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damage." Gracey v. Eaker, 837 So. 2d 348, 353 (Fla. 2002) (footnote omitted). The defendants argue that Count V should be dismissed because the plaintiff has failed to plead ultimate facts establishing a fiduciary relationship between herself and NSU or

---

[2] In her response to the motion to dismiss, the plaintiff cites to the defendants' violation of the policy concerning make-up examinations for emergency medical situations. See Plaintiff's Response to the Defendants' Motion to Dismiss Counts IV, V, VI, VII of the Plaintiff's Complaint and Opposing Memorandum of Law (DE# 21 at 5, 1/10/14). In their reply, the defendants note that the policy concerning make-up examinations appears on a course syllabus and not in the Student Handbook. See Defendants' Reply to Plaintiff's Response in Opposition to the Defendants' Motion to Dismiss Counts IV, V, VI, and VII of the Complaint (DE# 23 at 3 n.1, 1/21/14). While the terms of a contract may arise from a student handbook or other university publication, the undersigned finds no legal support for the proposition that a course syllabus creates a binding contract between a student and his or her professor or with the university. Accordingly, the plaintiff cannot maintain a breach of contract claim based on policies contained in the course syllabus.

6

herself and Professor Stern. See Defendants' Motion to Dismiss Counts [IV], V, VI and VII of the Plaintiff's Complaint (DE# 5 at 2, 11/22/13). The plaintiff maintains that she has pled a cause of action for breach of fiduciary duty citing "Florida's policy of broadly defining fiduciary relationships and the special relationship that exists between Defendant NSU and its students . . . ." Plaintiff's Response to the Defendants' Motion to Dismiss Counts IV, V, VI, VII of the Plaintiff's Complaint and Opposing Memorandum of Law (DE# 21 at 11, 1/10/14). The parties have not cited, and the undersigned has been unable to find, a case establishing a fiduciary relationship between a student and a university under Florida law.[3]

"A fiduciary relationship may be either express or implied." MediaXposure Ltd. v. Harrington, No. 8:11-CV-410-T-TGW, 2012 WL 1805493, at *6 (M.D. Fla. 2012) (citations omitted). "Express fiduciary relationships are created by contract, such as principal/agent or can be created by legal proceedings, as in the case of a guardian/ward." Id. Implied fiduciary relationships arise from "the specific factual situation surrounding the transaction and the relationship of the parties." Id. (internal quotation marks and citation omitted).

In certain instances, Florida law recognizes a fiduciary duty based on the nature of the relationship between the parties. See e.g., Tiara Condo. Ass'n v. Marsh, USA, Inc., No. 08-80254-CIV, 2014 WL 109140, at *7 (S.D. Fla. Jan. 13, 2014) (stating that

---

[3] The plaintiff does cite to Nova Se. Univ., Inc. v. Gross, 758 So. 2d 86 (Fla. 2000), but acknowledges that the case involved a negligence claim and that "it does not appear that Florida courts have addressed the circumstances where a fiduciary relationship arises between a student and a university." Plaintiff's Response to the Defendants' Motion to Dismiss Counts IV, V, VI, VII of the Plaintiff's Complaint and Opposing Memorandum of Law (DE# 21 at 7, 1/10/14).

"Florida law has long recognized that an insurance broker owes a fiduciary duty of care to the insured"); Fla. Software Sys., Inc. v. Columbia/HCA Healthcare Corp., 46 F. Supp. 2d 1276, 1286 (M.D. Fla. 1999) (stating that "Florida law recognizes fiduciary relationships arising out of joint ventures."); Doe v. Allstate Ins. Co., 653 So. 2d 371, 373-74 (Fla. 1995) (recognizing a fiduciary duty between a liability insurer and its insured); Askew v. Allstate Title & Abstract Co., Inc., 603 So. 2d 29, 31 (Fla. 2d DCA 1992) (stating that "the title agent has a fiduciary duty to both the buyer and the seller . . . ."); Cohen v. Hattaway, 595 So. 2d 105, 107 (Fla. 5th DCA 1992) (stating that "[c]orporate directors and officers owe a fiduciary obligation to the corporation and its shareholders and must act in good faith and in the best interest of the corporation.").

In other instances, where there is no fiduciary duty established under the law, Florida courts may still recognize a fiduciary duty based on the specific actions of the parties. See, e.g., Bldg. Educ. Corp. v. Ocean Bank, 982 So. 2d 37, 40-41 (Fla. 3d DCA 2008) (recognizing that while no fiduciary duty is generally presumed between a bank and its customers, "[a] fiduciary relationship may arise . . . under special circumstances where the bank knows or has reason to know that the customer is placing trust and confidence in the bank and is relying on the bank so to counsel and inform him" and "include instances where the lender takes on extra services for a customer, receives any greater economic benefit than from a typical transaction, or exercises extensive control.") (internal quotation marks and citations omitted)).[4]

---

[4] Ultimately in Bldg. Educ. Corp., the appellate court affirmed the lower court's grant of summary judgment in favor of the bank on the customer's claim for breach of fiduciary duty based on the specific facts of that case. Bldg. Educ. Corp., 982 So.2d at 41.

The instant complaint alleges that NSU promoted itself in a certain manner and that Professor Stern made invitations and promises to the plaintiff:

> 56. As a private university NSU promoted itself to Plaintiff Orzechowtiz as providing its students with a safe, caring and nurturing learning environment wherein Plaintiff could rely upon and trust that NSU would provide an environment free of discriminatory practices and serve as a fiduciary to its students. Plaintiff vested confidence in NSU in good faith and accepted this invitation of trust and relied upon NSU to provide her with a safe, caring and nurturing environment.
>
> 57. As Plaintiff's teacher, Professor Stern invited Plaintiff's utmost trust and confidence as Plaintiff's fiduciary, pursuant to which Stern promised to not only teach her to nursing [sic], but promised to provide her an environment free of discrimination and harassment. Plaintiff accepted Stern's invitation and reposed the utmost of trust and confidence in Stern as her fiduciary.

Complaint (DE# 1 at ¶¶56-57, 10/9/13). On a motion to dismiss, the Court is required to accept all well-pled allegations as true and construe the facts in the light most favorable to the plaintiff. See Caravello v. Am. Airlines, Inc., 315 F. Supp. 2d 1346, 1348 (S.D. Fla. 2004). Because the plaintiff has pled that NSU promoted itself in a certain manner and that certain promises were made to her by Professor Stern, the undersigned finds that at this stage of the proceedings the plaintiff has pled sufficient facts showing the existence of a fiduciary relationship between herself and NSU and herself and Professor Stern.

### C.     Count VI - Constructive Fraud

"Constructive fraud exists where a duty arising from a confidential or fiduciary relationship has been abused, or where an unconscionable advantage has been taken . . . . Florida courts have construed the term fiduciary or confidential relation as being very broad." Linville v. Ginn Real Estate Co., LLC, 697 F. Supp. 2d 1302, 1309 (M.D.

9

Fla. 2010) (citation and internal quotation marks omitted), <u>recons. denied</u>, No. 6:08-cv-1327-Orl-35-DAB, 2010 WL 3447279 (M.D. Fla. Aug. 26, 2010). To establish a fiduciary or confidential relationship:

> a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party. Constructive fraud will not lie where the parties are dealing at arms length because there is no duty imposed on either party to protect or benefit the other. The fact that one party places trust or confidence in the other does not create a confidential relationship in the absence of some recognition, acceptance or undertaking of the duties of a fiduciary on the part of the other party.

<u>2021 N. Le Mans, LLC v. Fifth Third Bank</u>, No. 8:10-cv-655-T-23TGW, 2010 WL 1837726, at *3 (M.D. Fla. May 3, 2010) (citation and internal quotation marks omitted). Because the complaint pleads facts establishing a fiduciary relationship between the plaintiff and NSU and between the plaintiff and Professor Stern, <u>see</u> Complaint (DE# 1 at ¶¶ 62-63), the constructive fraud claim will not be dismissed as to either defendant. <u>See</u> <u>supra</u>.

### D.   Count VII - Intentional Infliction of Emotional Distress

In order to state a cause of action for intentional infliction of emotional distress (hereinafter "IIED"), the plaintiff must allege the following:

> (1) the wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused the emotional distress; and (4) the emotional distress was severe.

<u>Dominguez v. Equitable Life Assurance Soc'y of the U.S.</u>, 438 So. 2d 58, 59 (Fla. 3d DCA 1983). "Florida has adopted § 46 of the Restatement (Second) of Torts as the appropriate standard for IIED claims." <u>Lopez v. Target Corp.</u>, 676 F.3d 1230, 1236

10

(11th Cir. 2012) (citing Metro. Life Ins. Co. v. McCarson, 467 So. 2d 277, 278-79 (Fla. 1985)). "Section 46 states that '[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability.'" Id. (quoting Restatement (Second) of Torts § 46).

The defendants argue that Count VII should be dismissed because the plaintiff "fails to plead facts which rise to the level of [the] extreme and outrageous conduct required to maintain a claim of intentional infliction of emotional distress." Defendants' Motion to Dismiss Counts [IV], V, VI and VII of the Plaintiff's Complaint (DE# 5 at 2, 11/22/13). The plaintiff maintains that the cases cited by the defendants are distinguishable because they arise in the employment context and the alleged discrimination and harassment in the instant case occurred "in the context of the special student-university relationship." Plaintiff's Response to the Defendants' Motion to Dismiss Counts IV, V, VI, VII of the Plaintiff's Complaint and Opposing Memorandum of Law (DE# 21 at 11, 1/10/14).

"The question of what constitutes outrageous conduct is a matter of law to be resolved by the court." Elger v. Martin Mem'l Health Sys., Inc., 6 F. Supp. 2d 1351, 1354 (S.D. Fla. 1998). "The viability of a claim for intentional infliction of emotional distress is highly fact-dependent and turns on the sum of the allegations in the specific case at bar." Johnson v. Thigpen, 788 So. 2d 410, 413 (Fla. 1st DCA 2001) (citing Watson v. Bally Mfg. Corp., 844 F. Supp. 1533, 1537 (S.D. Fla. 1993)). In the instant case, the plaintiff alleges the following instances of discrimination and harassment:

- During the first few weeks of the semester, the plaintiff was "harassed and assaulted by a student of Arab descent. . . ." Complaint (DE# 1 at ¶14, 10/9/14);

- A male student "assaulted" the plaintiff by pretending to punch her on one occasion and on a different occasion, battered the plaintiff by grabbing and pulling the backpack the plaintiff was wearing. Id.;[5]

- Professor Stern refused to allow the plaintiff to take a make-up exam when the plaintiff's infant daughter was hospitalized even though Professor Stern's syllabus allowed for make-up exams in the case of medical emergencies. Id. at ¶15;

- The plaintiff was "admonished" by Professor Stern for changing out of her medical scrubs when the plaintiff believed she might have exposed herself and her unborn child to a contaminated specimen. Id. at ¶16;

- Professor Stern "singled-out" the plaintiff for wearing religious headwear and held a special meeting with other faculty during which she informed the plaintiff that her religious headwear was "unprofessional" and that the plaintiff appeared "ungroomed" despite the school's dress code policy which provided an exception for religious headwear. Id. at ¶17; This meeting was scheduled by Professor Stern directly before a national nursing exam. The meeting caused the plaintiff to be physically ill and unable to take this exam. Id. at ¶19;

- Professor Stern monitored the plaintiff's wearing of her religious headdresses and repeatedly contacted other faculty members to inquire as to whether plaintiff was wearing her religious headdresses. Id. at ¶18;

- Professor Yvonne Rhoades "chastised and ridiculed" the plaintiff for wearing a patterned headdress. Id. at ¶20;

- The dress code was enforced only against the plaintiff and "other non-Jewish students in the nursing program were continually permitted to wear certain hair accessories and adornments, such as brightly colored and sparkled headbands . . . ." Id. at ¶21.

In general, "Florida federal courts have held that repeated verbal abuse and physical contact are required to satisfy the extreme and outrageous element." Liste v.

---

[5] It is unclear from the complaint if this is the same student referred to in the preceding sentence.

Cedar Fin., No. 8:13-cv-3001-T-30AEP, 2014 WL 1092347, at *5 (M.D. Fla. Mar. 19, 2014) (citing Oppenheim v. I.C. Sys., Inc., 695 F. Supp. 2d 1303, 1310 (M.D. Fla. 2010), aff'd, 627 F.3d 833 (11th Cir. 2010) (finding as a matter of law that defendant's conduct of calling 35-40 times over a period of three months was not sufficiently outrageous)). In some instances, Florida state courts have permitted a plaintiff to move forward with an IIED claim based on verbal threats. See e.g., Nims v. Harrison, 768 So. 2d 1198 (Fla. 1st DCA 2000) (finding sufficient outrageousness to state an IIED claim where the allegations involved death threats and threats to rape the plaintiff's children and other family relatives).

In this case, the plaintiff alleges only one instance of physical contact: when a male student grabbed and pulled a backpack worn by the plaintiff. See Complaint (DE# 1 at ¶14, 10/9/14). She does not allege the repeated and relentless physical contact required to state an intentional infliction of emotional distress claim. An IIED claim cannot proceed if the plaintiff has alleged only isolated, as opposed to repeated and relentless, instances of physical harassment. See, e.g., Scelta v. Delicatessen Support Servs., Inc., No. 98-2578-CIV-T-17B, 1999 WL 1700010, *28 (M.D. Fla. Jul. 6, 1999) ("Plaintiff's Complaint, however, fails to establish the extreme and outrageous conduct necessary to establish a claim of intentional infliction of emotional distress. . . . Plaintiff merely alleges one (1) instance of offensive touching and several incidents of verbal harassment.").

The two cases cited by the plaintiff in support of her argument that the defendants' actions rise to the level of outrageous conduct – McAlpin v. Sokolay, 596 So. 2d 1266 (Fla. 5th DCA 1992) and Dominguez v. Equitable Life Assurance Soc'y of

the United States, 438 So. 2d 58 (Fla. 3d DCA 1983) – are factually distinguishable from the instant case. The Eleventh Circuit has described McAlpin and Dominguez as cases "involv[ing] a defendant in a position of power over a **plaintiff who was, due to the circumstances, peculiarly susceptible to emotional distress**." Lopez, 676 F.3d at 1237 n.5 (emphasis added). The complaint in McAlpin alleged that at the time of the verbal assault, the plaintiff "was in physical distress because of her medical symptoms" and "was in emotional distress because of her fear that such symptoms indicated cancer." McAlpin, 596 So. 2d at 1267. The complaint in Dominguez alleged that the defendants knew the plaintiff "was suffering both physical and mental total disability." Dominguez, 438 So. 2d at 61. As the appellate court in Dominguez made clear, the "combination of the unjustified assertion of power by one party, **and impotence of the other** would . . . be viewed by a civilized community as outrageous and not as an indignity, annoyance or petty oppression for which the law affords no relief." Dominguez, 438 So. 2d at 62 (emphasis added).

Here, the plaintiff was pregnant and not in a similar physical or emotionally vulnerable position as the plaintiffs in McAlpin and Dominguez which rendered them "peculiarly susceptible to emotional distress." Lopez, 676 F.3d at 1237 n.5. The Florida courts are clear that "[l]iability [for IIED] does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" Altman v. Lifespace Comtys, Inc., No. 11-80334-CIV, 2012 WL 414826, at *5 (S.D. Fla. Feb. 8, 2012) (quoting Scheller v. Am. Med. Int'l, Inc., 502 So. 2d 1268, 1271 (Fla. 4th DCA 1987)). Accordingly, the plaintiff's IIED claim is therefore **DISMISSED without prejudice** for

failure to state a claim under Florida law.

## CONCLUSION

In accordance with the foregoing, it is

ORDERED AND ADJUDGED that the Defendants' Motion to Dismiss Counts [IV], V, VI and VII of the Plaintiff's Complaint (DE# 5, 11/22/13) is **GRANTED in part and DENIED in part**. Count IV (breach of contract) as to Professor Stern and count VII (intentional infliction of emotional distress) are hereby **DISMISSED without prejudice**.

DONE AND ORDERED in Chambers, Miami, Florida this day, the 31 of March, 2014.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
United States District Judge Lenard
All Counsel of Record